Dana Charleston LUCOSKI d/b/a Subway Shops, and Robert P. Musgrave, Trustee, Appellants,

v.

**INTERNAL REVENUE SERVICE, Appellee.**

**In re Dana Charleston LUCOSKI d/b/a Subway Shops.**

**No. EV 90–72–C.**

United States District Court, S.D. Indiana, Evansville Division.

April 8, 1991.

Kathryn D. Peters, Evansville, Ind., for appellants.

Robert P. Musgrave, Trustee, Evansville, Ind.

Thomas E. Kieper, Asst. U.S. Atty., Indianapolis, Ind., for appellee.

## MEMORANDUM

BROOKS, Chief Judge.

This matter is before the Court on an appeal of the Bankruptcy Court ruling issued on June 20, 1990 which dismissed the case after finding that the debtor failed to meet the Chapter 13 eligibility requirements which are set out in 11 U.S.C. § 109. The APPELLEE'S BRIEF was filed on September 12, 1990. The APPELLANT'S BRIEF was filed on August 13, 1990. Oral arguments were heard in this matter on September 14, 1990 at which time the matter was taken under advisement.

STANDARD OF REVIEW

On appeal, the district court applies the standard set out in Bankruptcy Rule 8013, which provides:

On an appeal, the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Thus, the district court will not set aside a finding of fact made by the bankruptcy court unless clearly erroneous. Alternatively, matters of law are subject to *de novo* review by the district court. *In re Branding Iron Motel, Inc.*, 798 F.2d 396 (10th Cir.1986); *In the Matter of Bonnett*, 895 F.2d 1155 (7th Cir.1989). Jurisdiction is conferred on the district court pursuant to 28 U.S.C. § 158.

## FACTS AND PROCEDURAL HISTORY

1. On November 30, 1989 debtor/appellant, Dana Charleston Lucoski, d/b/a Subway Shops, filed a Voluntary Petition under Chapter 13 of the Bankruptcy Code.

2. The debtor/appellant also filed the appropriate schedules on November 30, 1989. These schedules indicated that debtor/appellant met the Chapter 13 eligibility requirements set forth in 11 U.S.C. § 109, that debtor/appellant's secured debts did not exceed Three Hundred Fifty Thousand Dollars ($350,000.00) and that debtor/appellant's unsecured debts did not exceed One Hundred Thousand Dollars ($100,000.00).

3. A Chapter 13 Plan was filed on December 4, 1989.

4. Initially, debtor/appellant was not represented by counsel. However, Kathryn D. Peters, Esq. entered an appearance on behalf of debtor/appellant on January 5, 1990.

5. An Amended Chapter 13 Plan was filed on January 5, 1990.

6. On February 1, 1990 the Internal Revenue Service (hereinafter IRS) filed the GOVERNMENT'S OBJECTION TO CONFIRMATION OF DEBTOR'S AMENDED CHAPTER 13 PLAN.

7. On March 15, 1990 an OBJECTION TO CONFIRMATION was filed by Kraft/McMahon Food Service.

8. The Internal Revenue Service filed a MOTION TO DISMISS on June 15, 1990.

9. The Trustee filed a MEMORANDUM OF LAW ON ISSUE OF DEBTOR ELIGIBILITY on June 16, 1990.

10. A stipulation was filed in this case on June 20, 1990. The pertinent provisions of this Stipulation set forth:

3. The undersigned stipulate that the debtor, Dana C. Lucoski, filed those schedules in good faith.

4. The undersigned stipulate that after the schedules were filed, it was discovered that EMAC had not perfected its security interest and its claim of $50,470.00 would be treated as unsecured post-confirmation.

5. The undersigned stipulate that the Internal Revenue Service, subsequent to the filing of all necessary returns, has an unsecured claim for $31,484.39.

6. The undersigned stipulate that Bank 1 Leasing filed an unsecured claim for $3,728.40.

7. The undersigned stipulate that scheduled unsecured debt totals $19,551.66.

Thus, the total of debtor/appellant's unsecured debts is One Hundred Five Thousand Two Hundred Thirty–Four Dollars and Forty–Five Cents ($105,234.45).

11. An AMENDED CHAPTER 13 PLAN was filed on June 20, 1990.

12. A hearing on the MOTION TO DISMISS filed by the Internal Revenue Service was before the Bankruptcy Court on June 20, 1990. After hearing the arguments and taking a brief recess, the Court ruled that the debtor/appellant failed to meet the eligibility requirements set forth in 11 U.S.C. § 109(e) since the unsecured debts exceeded One Hundred Thousand Dollars ($100,000.00). The Bankruptcy Court further stayed the ruling for ten days to allow the debtor an opportunity to convert the case to a proceeding under Chapter 7 of the Bankruptcy Code.

13. The Court's Entry on the Motion to Dismiss was signed by the Honorable Michael H. Kearns on June 26, 1990.

14. The debtor/appellant and the Trustee filed a NOTICE OF APPEAL on June 29, 1990.

15. The debtor/appellant and the Trustee also filed a MOTION FOR STAY OF ORDER PENDING APPEAL on June 29, 1990.

16. On June 29, 1990 debtor/appellant and the Trustee further filed the DESIGNATION OF RECORD.

17. The STATEMENT OF ISSUES ON APPEAL was filed by the debtor/appellant and the Trustee on June 29, 1990.

18. On July 9, 1990 the Bankruptcy Court GRANTED the MOTION FOR STAY OF ORDER PENDING APPEAL which had been filed by debtor/appellant and the Trustee on June 29, 1990.

19. On July 26, 1990 the Trustee filed the MOTION FOR EMPLOYMENT OF ATTORNEY FOR TRUSTEE and the VERIFIED STATEMENT IN SUPPORT OF MOTION FOR EMPLOYMENT OF ATTORNEY with this Court.

20. This Court DENIED Trustee's MOTION FOR EMPLOYMENT OF ATTORNEY FOR TRUSTEE on August 10, 1990.

21. APPELLANT'S BRIEF was filed on August 13, 1990.

22. On August 22, 1990 Kraft/McMahon Food Service filed a MOTION TO INTERVENE. The MEMORANDUM IN SUPPORT thereof was filed on August 31, 1990.

23. Debtor/appellant filed a MOTION TO RECONSIDER ORDER of August 10, 1990 denying Trustee's MOTION FOR EMPLOYMENT OF ATTORNEY FOR TRUSTEE.

24. This Court DENIED Kraft/McMahon Food Service's MOTION TO INTERVENE on September 6, 1990.

25. The APPELLEE'S BRIEF was filed on September 12, 1990.

26. On September 14, 1990 the Court heard oral arguments on the appeal and the debtor/appellant's MOTION TO RECONSIDER ORDER of August 10, 1990 denying Trustee's MOTION FOR EMPLOYMENT OF ATTORNEY FOR TRUSTEE. These matters were taken under advisement.

ISSUES TO BE DETERMINED ON APPEAL

The issues which this Court will decide, as raised in APPELLANTS' BRIEF filed August 13, 1990, are:

1. Whether the lower court was correct in dismissing this case when the Schedules, stipulated to have been filed in good faith, showed an unsecured debt of less than the One Hundred Thousand Dollar ($100,000.00) limit of 11 U.S.C. § 109(e), in contradiction of *In re Pearson*, 773 F.2d 751 (6th Cir.1985), and related cases; and

2. Whether the lower court correctly interpreted and applied the decision of the Seventh Circuit Court of Appeals in *In re Day*, 747 F.2d 405 (7th Cir.1984).

In APPELLANTS' BRIEF, the issue stated is:

1. Whether the lower court erred in dismissing the debtor's Chapter 13 proceeding for the reason that the debtor exceeded the statutory limitation of $100,000 of non-contingent, liquidated, unsecured debt was provided at 11 U.S.C. Section 109(e).

The Court finds that the issue to be determined on appeal involves the interpretation of 11 U.S.C. § 109(e), which section sets forth the eligibility requirements which must be met for a debtor to proceed under a Chapter 13 proceeding. Since the issue involves an interpretation of a statute, it is a matter of law, and thus the Bankruptcy Court's ruling is subject to *de novo* review.

DISCUSSION

A. Jurisdiction

■ Debtor/appellant first raises the issue of whether or not section 109(e) is jurisdictional. In its brief, the IRS indicates that it will not challenge the Bankruptcy Court's finding that the debtor/appellant could convert to another Chapter under the Bankruptcy Code. This Court finds that staying the order of dismissal for ten days to allow the conversion was a proper procedure. *See generally, In re Wenberg*, 94 B.R. 631 (9th Cir. BAP 1988) *Aff'd* 902 F.2d 768 (9th Cir.1990); *In re Martin*, 78 B.R. 928 (S.D.Iowa 1987).

B. Eligibility Determination

■ When debtor/appellant filed the Chapter 13 schedules on November 30, 1989, debtor/appellant was not represented

by counsel. It was stipulated by the parties on June 20, 1990 that debtor/appellant filed those Schedules in good faith. The parties further stipulated that after the filing of the petitions, it was discovered that the EMAC claim of Fifty Thousand Four Hundred Seventy Dollars ($50,470.00) had not been perfected. Therefore, this claim which had been treated as secured on the original schedules, was actually unsecured. With the addition of the amount of the EMAC claim, the unsecured claim of the IRS, Bank 1 Leasing, and the unsecured claims listed on the original Schedule, the One Hundred Thousand Dollar ($100,000.00) limit was exceeded. Thus, the question to be determined by this Court is whether the Court, in determining Chapter 13 eligibility, is limited to a review of the original schedules, if such schedules have been filed in good faith. For the reasons stated below, the Court finds that it is not limited to the schedules filed in good faith, and therefore, the ruling of the Bankruptcy Court is AFFIRMED.

Section 109 of the Bankruptcy Code is entitled "Who May be a Debtor," and sets forth general eligibility requirements necessary to proceed under the Bankruptcy Code, and the specific eligibility requirements applicable to each Chapter of the Bankruptcy Code. The Chapter in question in this appeal is Chapter 13. Section 109(e) deals with Chapter 13 eligibility requirements, and provides:

> Only an individual with regular income that owes, *on the date of the filing of the petition*, noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000 may be a debtor under Chapter 13 of this title.

(Emphasis Added).

Regarding the eligibility requirements of 11 U.S.C. § 109(e), *Collier on Bankruptcy* sets forth, in pertinent part:

The eligibility criteria set forth in respect to this provision are specific and restrictive, with monetary amounts established to govern eligibility so as to insure that those persons for whose benefit the chapter is directed are those who employ its provisions. Thus, the fundamental purpose of section 109(e) is to establish the dollar limitations on the amount of indebtedness that an individual with regular income can incur and yet file under Chapter 13. . . .

In contrast to provisions involving Chapter 7 debtors, the language of section 109(e) is drafted explicitly to require that a Chapter 13 debtor *owes debts* on the date that the petition is filed. However, while the debtor must owe some debts, he cannot owe debts in too large an amount and still expect to take advantage of the streamlined rehabilitative scheme provided in Chapter 13. Thus, the core of subsection (e) is directed toward establishment of monetary amounts which determine eligibility for Chapter 13 relief. The debtor must owe less than $100,000 in unsecured debts and less than $350,000 in secured debts at the time of the filing of the petition. The dollar limits on both categories of debts, unsecured and secured, apply only to debts that are noncontingent and liquidated at the crucial petition filing time.

2 *Collier on Bankruptcy* § 109.05 (1989) (emphasis in original) (footnotes omitted).

House Report No. 95–595 provides, with respect to 11 U.S.C. § 109(e):

Subsection (e) specifies eligibility for Chapter 13, Adjustment of Debts of an Individual with Regular Income. An individual with regular income, or an individual with regular income and the individual's spouse, may proceed under Chapter 13. As noted in connection with the definition of the term "individual with regular income", this represents a significant departure from current law. *The change might have been too great, however, without some limitation.* Thus, the debtor (or the debtor and

spouse) must have unsecured debts that aggregate less than $100,000, and secured debts that aggregate less than $500,000 [a compromise between the Senate and the House later reached the enacted $350,000 level for secured debts]. These figures will permit the small sole proprietor, for whom a chapter 11 reorganization is too cumbersome a procedure, to proceed under chapter 13.... (Emphasis added).

Neither of these sources specifically indicate whether or not the Court may look past the original schedules, filed in good faith, to determine if the debtor meets the Chapter 13 eligibility requirements. Thus, relevant case law will be analyzed to determine if debtor/appellant may proceed under Chapter 13 where it is discovered, after the filing of the schedules, in good faith, that unsecured debts aggregate more than One Hundred Thousand Dollars ($100,000.00).

The principal case relied on by debtor/appellant is *In re Pearson*, 773 F.2d 751 (6th Cir.1985). In the *Pearson* case the debtors, on December 20, 1982, had a One Hundred Twenty–Seven Thousand Four Hundred Fifty Dollar and Twelve Cent ($127,450.12) arbitration award rendered against them. The award also provided that certain collateral was to be transferred to the creditor. The debtor initiated a Chapter 13 proceeding on March 18, 1983. The Chapter 13 schedules listed the creditor in whose favor the arbitration award was rendered as having both a secured and unsecured debt, with the amount of each being designated as "unknown and in dispute." *Id.* at 752. The transfer of collateral to the creditor was set aside as a preference on May 24, 1983. Thus, the creditor objected to confirmation of the Chapter 13 Plan on the basis that the debtor failed to meet the Chapter 13 eligibility requirements, arguing the entire One Hundred Twenty–Seven Thousand Four Hundred Fifty Dollars and Twelve Cents ($127,450.12) should be treated as unsecured on the date the petition was filed.

The *Pearson* court first reviewed the reasoning behind the 1978 amendments to Chapter 13 of the Bankruptcy Court. Specifically, the court noted that "Congress desired to give small sole proprietors the benefit of Chapter 13, but also established dollar limits to prevent larger businesses from taking advantage of the provisions." *Id.* at 753. The *Pearson* court held the debtor met the Chapter 13 eligibility requirements, ruling:

> Another view is that a court should rely primarily upon the debtor's schedules checking only to see if the schedules were made in good faith on the theory that section 109(e) considers debts as they exist at the time of filing, not after a hearing. *See, In re King*, 9 B.R. 376 (Bankr.D.Or.1981). We adhere to this construction as more harmonious with Congressional intent and with the statutory scheme. First, section 109(e) provides that the eligibility computation is based on the date of filing the petition; it states nothing about computing eligibility after a hearing on the merits of the claims. Second, the fact that evidence must be taken to determine the amount of the claim indicates that, until then, the claim was unliquidated. Third, the Bankruptcy Code contemplates that a Chapter 13 plan be adopted and implemented in a short period of time. Rule 3015 of the Bankruptcy Code provides that a plan "shall be filed within 15 days [after the filing of the petition] and such time shall not be extended except for cause shown...." "Unless the court orders otherwise, the debtor shall commence making the payments proposed by a plan within 30 days after the plan is filed." 11 U.S.C. § 1326. Thus, within forty-five days of the Chapter 13 bankruptcy petition, the debtor should be making payments under the proposed plan.

*Id.* at 756.

The *Pearson* decision was handed down by the Sixth Circuit. This is persuasive, but not binding authority. This Court does not adopt the *Pearson* holding. The *Pearson* court ruled that "section 109(e) provides that the eligibility computation is based on the date of filing the petition; it states nothing about computing eligibility after a hearing on the merits of

the claims." This Court agrees with this statement, but does not feel this restricts the eligibility determination to the schedules. In the present controversy, the EMAC claim was not perfected on November 30, 1989 when the bankruptcy proceeding was initiated. This Court does not adopt the restrictions imposed by the *Pearson* court. Rather, this Court rules that even if the schedules reflect the eligibility requirements are met, if it is determined within a reasonable time that the debts exceed the statutory maximums, the case must be dismissed, or the debtor may be given the opportunity to convert to a different proceeding under the Bankruptcy Code.

The Court feels this view is more harmonious with the statutory language, and the legislative history. First, the language of the statute provides an "individual(s) ... that owe(s), on the date of filing of the petition...." The statute terms deal with what is actually owed, not what the debtor and/or others believe is owed.

Similarly, the legislative history indicates that under the Bankruptcy Reform Act, Chapter 13 was expanded to allow small sole proprietors to take advantage of the less cumbersome Chapter 13 procedure. To prevent too great a change, however, Congress established a monetary limit so that only small sole proprietors would qualify. The aggregate total for unsecured debts was set at One Hundred Thousand Dollars ($100,000.00). Adopting a view which would allow a debtor to circumvent, intentionally or unintentionally, the statutory maximums is inconsistent with a legislative history indicating Congress' desire to limit those sole proprietors who would qualify to proceed under Chapter 13.

The *Pearson* court also indicated that the expeditious manner in which Chapter 13 proceedings are dealt with preclude looking beyond the filed schedules. The Bankruptcy Code does require a Chapter 13 plan be filed within fifteen (15) days and commence payments within thirty (30) days after the filing of the plan. The Bankruptcy Court may extend both of these time periods for cause. This Court holds that a good faith dispute regarding whether or not the debt- or meets the eligibility requirements is just cause for an extension of these time periods. Additionally, 11 U.S.C. § 1307 provides that a Chapter 13 debtor may convert to a Chapter 7 proceeding at any time, and may convert to a Chapter 11 or Chapter 12 proceeding before confirmation. Thus, the debtor will not be left without a remedy under the Bankruptcy Code.

Debtor/appellant also relies on the case of *St. Paul Indemnity Co. v. Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938) to support their contentions that the Court should not look beyond the schedules which were filed in good faith to determine if the eligibility requirements are met. The *St. Paul* case involved the jurisdictional amount necessary to file a cause of action in a United States District Court. The amount claimed in the Second Amended Complaint exceeded the requisite jurisdictional amount of Three Thousand Dollars ($3,000.00) and therefore was removed from state court. A judgment was entered in the amount of One Thousand One Hundred Sixty–Two Dollars and Ninety–Eight Cents ($1,162.98). The Court of Appeals refused to consider the appeal since the judgment was below the jurisdictional amount. The Court of Appeals ruled that the case should have been remanded to state court. In reversing, the Supreme Court held:

The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to

recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed. Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction.

*St. Paul,* 303 U.S. 283, 289–290, 58 S.Ct. 586, 590–591.

Although the analogy of a Chapter 13 proceeding to the jurisdictional requirements for federal district court is valid, this Court finds there are basic differences between the two proceedings. In *St. Paul,* the original complaint showed the plaintiff sought an amount in excess of the jurisdictional limit, but a subsequent amended complaint sought a lesser amount. The action had been removed from state court to federal court. Had the case been dismissed, the cause would have been remanded back to state court. In the present controversy, the Bankruptcy Court stayed the order of dismissal, granting the debtor the opportunity to convert the case to another Chapter under the Bankruptcy Code. This method grants the debtor the opportunity to convert to another proceeding, but the matter would be handled by the same Court. This is a much less complex and disruptive procedure than is a remand back to state court.

The Seventh Circuit case of *In re Day,* 747 F.2d 405 (7th Cir.1984) is relied upon by the appellee to support the contention that the Court should look primarily to the schedules to determine eligibility, but that the case should be dismissed if it is discovered that the unsecured debts exceed the One Hundred Thousand Dollar ($100,-000.00) statutory maximum. In the *Day* case the debtor filed a Chapter 13 proceeding. The schedules reflected unsecured debts of Sixty–Five Thousand Dollars ($65,-000.00) and secured debts of One Hundred Sixty–One Thousand Dollars ($161,000.00). Of the secured debts, Seventy–Three Thousand ($73,000.00) were subsequently found to be secured by worthless collateral pursuant to 11 U.S.C. § 506. As a result, the aggregate actual unsecured debts exceeded the statutory maximum of One Hundred Thousand Dollars ($100,000.00). The debt-

or argued that sections 109(e) and 506(a) were mutually exclusive, and that a section 109(e) determination of Chapter 13 eligibility should involve a valuation of the collateral. After reviewing cases which held that the court should look beyond the schedules and value the collateral under 11 U.S.C. § 506(a), the Court ruled:

*These decisions avoid the temptation to raise form over substance and represent a common-sense solution to a statutory interpretation problem not considered by Congress.* As noted by the court in [*In Re*] *Ballard* [4 B.R. 271 (Bkrtcy.E.D.Va.1980)] *supra,* a contrary interpretation of section 109(e) could lead, at the limit, to the absurd, situation where a prospective Chapter 13 debtor with $449.998 in unsecured debts creates a security interest for $349,999 in property with little or no value. *If courts cannot look beyond the mere existence of documents creating such an interest, this maneuver produces secured debts of $349,999 and unsecured debts of $99,-999—amounts within section 109(e). Surely Congress did not intend for debtors to so easily circumvent the $100,000 limitation on unsecured debts in Chapter 13 proceedings.*

*Id.* at 407 (Emphasis added).

According to the debtor/appellant the *Day* case is not applicable to the present controversy. According to debtor/appellant the *Day* court analyzed the case under section 506(a), but did not give any attention to issues which would arise under section 109(e), and the present controversy does not involve a section 506(a) valuation. This argument must fail, however. The *Day* case stands for the proposition that the Court is not limited to the schedules when determining whether or not the Chapter 13 eligibility requirements are met. Thus, the fact that the present controversy does not involve a section 506(a) valuation is irrelevant.

Further, debtor/appellant contends that "to the extent that *Day* may be interpreted as a § 109(e) case, it is in agreement with *Pearson.*" "The court's initial action in *Day* was to examine debtor's schedules to

test debtor's good faith by examination of the valuation placed on certain accounts receivable by debtor in his schedules. Debtor failed the test." Appellant's Brief, p. 17. However, after reading the case, this Court fails to find that the Seventh Circuit engaged in such an analysis. Even had such an analysis been undertaken, it would be irrelevant since this Court holds that if, on the date of the filing of the petition, the debtor does not meet the Chapter 13 eligibility requirements, and it is discovered within a reasonable period of time after the schedules are filed, good faith is irrelevant.

■ This position is bolstered by the fact that section 109(e) does not have any provisions about good faith. Although good faith is inherent when documents are signed and filed, other sections of the code specifically discuss the concept of good faith. For example, 11 U.S.C. § 1325 which deals with the confirmation of a Chapter 13 plan provides, in pertinent part that the plan shall be confirmed if "the plan has been proposed in good faith and not by any means forbidden by law. Further, in light of the fact that *Day* rules a valuation of the collateral is permissible, the more harmonious view is that the Court may determine the status of secured interests, or the true value of the collateral, for purposes of ascertaining whether or not the Chapter 13 eligibility requirements have been met.

■ As a result, it must be determined whether or not the dispute over satisfaction of the Chapter 13 eligibility requirements in the present controversy arose within a reasonable period of time. The Voluntary Petition seeking relief and the schedules were filed on November 30, 1989. A Chapter 13 Plan was filed on December 4, 1989 with an Amended Chapter 13 Plan being filed on January 5, 1990. Prior to confirmation, the IRS filed an objection to confirmation of the Plan. Thus, the dispute over the eligibility requirements arose within a reasonable period of time, and the dismissal by the Bankruptcy Court was correct.

■ The debtor/appellant also cites numerous other cases as supporting the view that the Court should not look beyond the schedules which have been filed in good faith. The Court has reviewed these cases, and finds that they do not change the Court's ruling since this Court does not adopt the *Pearson* holding. Thus, those cases will not be individually reviewed in this Memorandum. *See In re Edmonston,* 99 B.R. 993 (Bkrtcy.E.D.Cal.1988); *In re Rigdon,* 94 B.R. 602 (Bkrtcy.W.D.Mo.1988); *In re Robertson,* 84 B.R. 109 (Bkrtcy.S.D. Ohio 1988); *In re Carpenter,* 79 B.R. 316 (Bkrtcy.S.D.Ohio 1987); *In re Martin,* 78 B.R. 928 (Bkrtcy.S.D.Iowa 1987); *In re Potenza,* 75 B.R. 17 (Bkrtcy.D.Nev.1987); *In re Hutchens,* 69 B.R. 806 (Bkrtcy.E.D. Tenn.1987); *In re Koehler,* 62 B.R. 70 (Bkrtcy.D.Neb.1986); *In re King,* 9 B.R. 376 (Bkrtcy.D.Or.1981).

Additionally, the Court has reviewed numerous other cases which have cited either *Pearson* or *Day.* A few of those cases will be discussed below. The case of *In re Jerome,* 112 B.R. 563 (Bkrtcy.S.D.N.Y. 1990) discusses both the *Pearson* and the *Day* cases. In *Jerome* a creditor moved for the dismissal of a Chapter 13 proceeding alleging the debtors' noncontingent, liquidated, unsecured debts exceeded the $100,000 ceiling set by section 109(e). The debtor argued that a disputed debt did not have to be computed when determining whether or not the Chapter 13 eligibility requirements are met. In rejecting the debtors' argument, the Court ruled:

Hence, the debtors' failure to schedule the balance of the disputed rent claim does not enhance their eligibility for Chapter 13 relief because the amount of claims asserted against them when they filed their Chapter 13 petition was then known or ascertainable by the debtors in the exercise of good faith. Clearly, the debtors could have considered that their unsecured liability to Realty Associates was at least in dispute and could have reasonably amounted to more than $100,-000.00. The court must look realistically at the state of the debtors' affairs when they filed their Chapter 13 petition. *See Comprehensive Accounting Corpora-*

*tion v. Pearson (In re Pearson)*, 773 F.2d at 758....

> The reason for allowing courts to look beyond schedules and petitions is to prevent a debtor from circumscribing the rules. If the court could not examine the value of the collateral, a debtor could file unsecured debt of $99,999, an amount with section 109(e) limitations, without the creditors being able to dismiss the Chapter 13.

*In re Edmonston*, 99 B.R. at 999.

> This court need not wait until the debtors' objection to the amount of Realty Associates' proof of claim is determined because a disputed, unsecured claim is not excluded from the process of calculating the $100,000.00 limitation.

*Id.* at 566–67. Although the *Jerome* case does not discuss the concept of good faith, it does stand for the proposition that the bankruptcy court may look beyond the schedules filed by the debtor.

Similarly, in the case of *In re Dally*, 110 B.R. 630 (Bkrtcy.D.Conn.1990) deals with debts which the debtor listed as disputed. The total disputed secured debts exceeded the applicable limits. Ten days after filing the Chapter 13 proceeding the debtors exercised their rights to rescind second and third mortgages, thus the debtor argued that they were in actuality eligible for Chapter 13 status. The court ruled that this did not bring the debtor within the Chapter 13 eligibility requirements. *Id.* at 631. The court found that there was no need to look beyond the schedules to what occurred after the filing since the actual circumstances on the date the petition is filed is determinative of eligibility, and on that date the debtors had not exercised their rights to rescind.

In the case of *In re Pennypacker*, 115 B.R. 504 (Bkrtcy.E.D.Pa.1990) the court was dealing with the conversion of a Chapter 13 proceeding to a Chapter 7 proceeding. The conversion was sought on the basis that the debtor's noncontingent, liquidated, unsecured debts exceed the $100,000 limit. The debtor contested the conversion alleging the majority of her unsecured debts were contingent and unliquidated and, therefore, should not be included in the eligibility requirement computations. In rejecting the debtor's argument, the court found:

> In *Matter of Pearson, supra,* the Sixth Circuit Court of Appeals held that chapter 13 eligibility should be determined by the debtor's schedules, implying that if the debtor lists the debt as disputed, it should not be included in the § 109(e) calculation unless the debtor files his schedules in bad faith. The bankruptcy court in *In re Lambert* [43 B.R. 913 (Bkrtcy.D.Utah 1984) ], *supra,* held that the court should rely upon the debtor's characterization of a debt in his schedules as disputed, and hence, unliquidated unless it can make an expeditious determination of the dispute. Finally, in *In re King, supra,* the bankruptcy court held that a debt is deemed unliquidated if a substantial dispute exists regarding liability; however, if the dispute involves only the amount of the debt, the debt should be treated as liquidated to the extent admitted by the debtor. This also implies that the bankruptcy court must decide the "dispute" before it can determine whether the debtor qualifies for chapter 13 relief under § 109(e). We reject these approaches because we find that to the extent they require total reliance by the court upon the debtor's characterization of the debts in his schedules, we do not believe that the debtor should be given unbridled authority to determine his eligibility for chapter 13 relief. This is particularly significant in light of the broad scope of the chapter 13 discharge.

*Id.* at 506.

Although the *Pennypacker* case dealt with debts which were listed as disputed, this Court finds the discussion is applicable to the present controversy. The Court should not be limited to the debtor's characterization of the debts for the eligibility determination. The restrictions were placed in § 109(e) so that only certain debtors would qualify for Chapter 13 relief, and this Court rules that the debtor should not be allowed to circumvent these restrictions,

even if the schedules were filed in good faith.

*See also In re Bos,* 108 B.R. 740, 742 (Bkrtcy.D.Mon.1989) ("I conclude the better reasoned view should follow the *Matter of Day* rationale and include the unsecured portion of a secured debt in the § 109(e) determination, where timely objection to eligibility is raised before confirmation of the Chapter 13 Plan."); *In re Hughes,* 98 B.R. 784, 788 (Bkrtcy.S.D.Ohio 1989) ("Where a debt is either unliquidated or contingent, or both, the debt is not included in a calculation of the debtor's eligibility for Chapter 13 under section 109(e) of the Bankruptcy Code. The subsequent judgment entry of the state court does not alter the debtor's eligibility for chapter 13 relief because section 109(e) considers debts as they exist at the time of filing."); *In re Crescenzi,* 69 B.R. 64 (Bkrtcy.S.D.N.Y. 1986) (Debtors cannot avail themselves of Chapter 13 proceeding by disputing the amount of unsecured debts); *In re Albano,* 55 B.R. 363 (N.D.Ill.1985) (Because of the greater asset protection and better protection of credit standing Chapter 13 eligibility requirements must be strictly applied).

### C. Policy Considerations

Debtor/appellant asserts that policy considerations promote the adoption of the *Pearson* holding. Specifically, debtor/appellant argues "[t]he two major public policies with which *Pearson* is in accord are the fostering of use of Chapter 13, and the policy favoring a speedy resolution of cases generally, and of Chapter 13 claims in particular." Appellants Brief, p. 18.

Debtor/appellant correctly pointed out that one of the aims of the 1978 revisions to the Bankruptcy Code was to promote the use of Chapter 13, and eligibility was extended to qualifying small sole proprietors. However, to avoid too great a change, Congress set the applicable qualifying limits of secured and unsecured debts which the debtor may owe on the date of the filing of the petition. House Report No. 95–595. The statutory language and legislative history do not favor the adoption of the *Pearson* holding, but favor a determination of the actual debts owed on the date of the filing of the petition.

Debtor/appellant is also correct in asserting that speedy resolution of Chapter 13 proceedings are favored. However, as previously noted, the Bankruptcy Court has the authority to extend the time limits for complying with the Chapter 13 procedures. Further, this Court holds that the desire for a speedy resolution of the matter cannot override the necessity that those persons allowed to take advantage of Chapter 13 proceedings meet the eligibility requirements set forth in section 109(e). Thus, this Court finds that the Court may look beyond the schedules, and may find the debtor ineligible for Chapter 13 relief subsequent to the filing of the petition, if within a reasonable time after the filing of the petition, it is determined that the debtor, in actuality, exceeded one or both of the statutory maximum amounts set forth in section 109(e).

### CONCLUSION

The question before the Court is whether or not the Bankruptcy Court may look beyond schedules, filed in good faith, to determine whether or not a debtor meets Chapter 13 eligibility requirements. After having reviewed the appropriate authority, this Court rules that a Bankruptcy Court may look beyond the filed schedules if a good faith dispute over eligibility arises within a reasonable period of time. Such a good faith dispute arose in the present controversy within a reasonable period of time, and thus the debtor/appellant was found to be ineligible for Chapter 13 relief. Therefore, after having considered the foregoing, the ruling of the Bankruptcy Court is hereby AFFIRMED.

IT IS SO ORDERED.